IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2022 APR 29 P 7: 05
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JOHN BOGLE, | ) |
| PLAINTIFF, | ) |
| V. | ) Case No.: |
| | ) 1:22-CV-256 |
| ALABAMA LAW ENFORCEMENT AGENCY, and WILL WRIGHT, | ) JURY TRIAL DEMANDED |
| DEFENDANTS. | ) |

## COMPLAINT

**JURISDICTION**

1. The Plaintiff, John Bogle, brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

3. This suit is authorized and instituted under 42 U.S.C. § 1983.

4. Bogle timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). The Bogle further sued within ninety (90) days after receiving the right-to-sue letter issued by the EEOC (Exhibit B).

**PARTIES**

5. Plaintiff, John Bogle, ("Plaintiff" or "Bogle") is a resident of Daphne, Baldwin County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama, Southern Division during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Southern Division.

6. The Defendant, Alabama Law Enforcement Agency ("Defendant" or "ALEA") is an agency of the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is headquartered in Montgomery, Alabama and subject to service of process in Alabama.

7. ALEA employed at least fifteen (15) and more than 500 people during the current or preceding calendar year.

8. Defendant Will Wright, is a Commander in the Highway Patrol of ALEA. He is a resident of Mobile County Alabama.

9. Wright is sued in his individual capacity.

**FACTS**

10. Bogle incorporates by reference and realleges preceding paragraphs 1 through 7 as if set out herein.

11. On or about January 25, 2005, Bogle began his employment with Defendant as a road trooper.

12. Bogle is a person of European ancestry, colloquially referred to as white.

13. Plaintiff's performance appraisals met expectations.

14. Bogle had no disciplinary actions before those discussed in this complaint.

15. In February 2007, Bogle was transferred to the Mobile post.

16. Bogle progressed quickly through the ranks because of his unique training as a drug recognition expert.

17. Bogle was also a traffic homicide investigator.

18. Bogle was promoted to sergeant in 2015 and assigned to the Mobile post.

19. When Bogle was assigned to the Mobile post, he was the only sergeant assigned there.

20. When Bogle was assigned to the Mobile post, the post needed reform.

21. Bogle spent several months organizing the office and handling the management affairs.

22. Bogle was able to manage the post with no issues for several years.

23. In or around May of 2018, Sergeant Douglass Huntley ("Huntley"), who is black, transferred to the Mobile Post.

24. Bogle remained post commander.

25. On or around August 1, 2018, Will Wright ("Wright") became the Troop Commander.

26. Soon after Wright became Troop Commander, Wright told Bogle that he would "fix" Bogle as a post commander.

27. Eventually, Wright began to take away Plaintiff's duties and give them to Huntley.

28. Over time, differences of opinion arose between Bogle and Huntley about how the post should be managed.

29. When that occurred, Wright sided with Huntley.

30. On May 23, 2019, a fellow trooper, Chad Wynne ("Wynne"), reported that Huntley had forged Wynne's name on his performance appraisal.

31. Wynne reported the issue to Bogle as policy required.

32. Bogle contacted the Personnel department and advised Wynne to report it to that department.

33. On July 11, 2019, Bogle was interviewed in Montgomery about the incident.

34. After investigating that incident, Huntley got a counseling statement for forging a trooper's signature, which is a crime.

35. Huntley had also been given the responsibility for scheduling for the post.

36. Huntley delegated that authority to other troopers below him.

37. On July 15, 2019, the training schedule was incorrect.

38. On July 26, 2019, Captain Wright issued Huntley and Bogle a warning for the scheduling error.

39. Bogle had no involvement in the error.

40. Not only was Bogle disciplined, but Wright also skipped the first level of discipline.

41. Until that time, Bogle had never been disciplined.

42. Bogle had never received any memos, counseling, or warnings for disciplinary issues in his file.

43. On October 21, 2019, Corporal Manual and Corporal Garrick were in Court, and there was a miscommunication about whether a motorist needed to go to Court or go to driving school.

44. On December 23, 2019, Huntley was transferred to the SBI.

45. When Huntley left, Bogle again took over managerial duties at the post and changed how it was managed.

46. In February of 2020, Wright began to bad-mouth Bogle to his peers, harming Plaintiff's chances of promotion.

47. The next day, Wright removed Bogle from the Drug Recognition Expert program and removed Plaintiff's support from corporals who reported to him to undermine his ability to succeed.

48. In April of 2020, Wright began to pull the employees Bogle had disciplined into a meeting to solicit negative information about Plaintiff.

49. During that time, Wright surfaced an alleged issue where a motorist had been advised that she did not need to come to Court.

50. On May 19, 2020, Wright reported the incident concerning the court incident to SIU to investigate Plaintiff's behavior.

51. Bogle had not violated any policies, and the Judge in the case verified Bogle had not done so.

52. The SIU investigation continued until May 28, 2020.

53. On August 22, 2019, Huntley received a mere counseling statement for the forged performance appraisal, a crime.

54. Huntley's discipline, which he received after the write-up and other prior disciplines, was a step below the discipline Bogle had received for a much lower offense.

55. On August 10, 2020, the Captain informed Bogle that he planned to demote him.

56. Since Bogle is a public employee with a property interest in his employment and liberty interest in clearing his name, Bogle requested a due process hearing.

57. Bogle was entitled to notice and an opportunity to be heard about the subject of the discipline.

58. Bogle was entitled to view the investigatory file related to his discipline.

59. However, Bogle was denied access to the file, which contained exculpatory information.

60. Bogle protested the withholding of information by filing a lawsuit under the Alabama Open Records Act.

61. Despite Plaintiff's protestations and the agency's failure to disclose the evidence that would have allowed Bogle to defend himself, the agency proceeded with the hearing.

62. On December 16, 2020, Bogle was formally demoted and moved to Dothan on patrol after the procedurally deficient hearing.

63. Sergeant Huntley, who is Black, had voided a ticket and was not demoted.

64. After Plaintiff's demotion was final, the agency finally agreed to hand over his file.

65. After Plaintiff's demotion, the agency posted his former position.

66. In February 2021, Bogle was replaced by a person who is Black.

67. On or about March 11, 2021, Bogle filed his Charge of Discrimination with the EEOC alleging race discrimination by the Alabama Law Enforcement Agency.

68. Less than a month after Bogle filed his Charge, the Alabama Law Enforcement Agency, at Wright's urging, initiated an investigation into Bogle's conduct.

69. ALEA then terminated Bogle's employment for conduct that was not a policy violation.

70. Moreover, the agency began the fishing expedition to unearth these alleged policy violations only after the EEOC charge was filed.

71. The allegations primarily center around events that happened years before Bogle made the complaint.

72. There was no effort to discipline Bogle until he complained about discrimination.

73. Bogle did not engage in any conduct on or off duty that violated policy or the standard operating procedures.

74. ALEA terminated Bogle's employment on or about June 21, 2021.

**COUNT I: TITLE VII - RACE DEMOTION – AGAINST ALEA**

75. Bogle incorporates by reference and realleges paragraphs 1 through 74 as if set out herein.

76. Bogle is a person of European Ancestry, colloquially referred to as "White."

77. Bogle was qualified to be the sergeant and post commander of the Mobile post.

78. Plaintiff's performance appraisals met expectations.

79. Bogle had no disciplinary actions before those discussed in this complaint.

80. On August 10, 2020, the Captain informed Bogle that he planned to demote him.

81. Since Bogle is a public employee with a property interest in his employment and liberty interest in clearing his name, Bogle requested a due process hearing.

82. Bogle was entitled to notice and an opportunity to be heard about the subject of the discipline.

83. Bogle was entitled to view the investigatory file related to his discipline.

84. However, Bogle was denied access to the file, which contained exculpatory information.

85. Bogle protested the withholding of information by filing a lawsuit under the Alabama Open Records Act.

86. Despite Plaintiff's protestations and the agency's failure to disclose the evidence that would have allowed Bogle to defend himself, the agency proceeded with the hearing.

87. Defendant's employee, Will Wright, demoted Bogle on or about December 16, 2020, to patrol officer.

88. Sergeant Douglass Huntley engaged in the same or similar conduct but remained employed.

89. On May 23, 2019, a fellow trooper, Chad Wynne, reported that Huntley had forged Wynne's name on his performance appraisal.

90. Huntley got only a counseling statement for forging a trooper's signature, a crime.

91. Huntley had also been given the responsibility for scheduling for the post.

92. Huntley delegated that authority to other troopers below him.

93. On July 15, 2019, the training schedule was incorrect.

94. On July 26, 2019, Captain Wright issued Huntley and Bogle a warning for the scheduling error.

95. Bogle had no involvement in the error.

96. Not only was Bogle disciplined, but Wright also skipped the first level of discipline.

97. Huntley's discipline, which he received after the write-up and other prior disciplines, was a step below the discipline Bogle had received for a much lower offense.

98. Huntley had voided a ticket in December and was not demoted.

99. Huntley is a person of African ancestry, colloquially referred to as "Black."

100. After Plaintiff's demotion, the agency posted his former position.

101. In February 2021, Bogle was replaced by a person who is Black.

102. Defendant's actions in demoting Plaintiff's employment violated Title VII.

103. Because Defendant violated Title VII, Bogle has been damaged, suffering loss of pay and benefits.

104. Defendant did not demote Huntley for the same or similar conduct.

105. Defendant's race was a motivating factor in Defendant's decision to demote Plaintiff.

106. Because of Defendant's discriminatory decision made in whole or in part because of his race, Bogle has lost pay and continues to be paid less.

**COUNT II: 42 U. S. C. § 1983 DEMOTION      AGAINST WRIGHT**

107. Bogle incorporates by reference and realleges preceding paragraphs 1 through 104 as if set out herein.

108. Bogle is a person of European Ancestry, colloquially referred to as "White."

109. Bogle was qualified for the position of sergeant and post commander.

110. Plaintiff's performance appraisals met expectations.

111. Bogle had no disciplinary actions before those discussed in this complaint.

112. On August 10, 2020, the Wright informed Bogle that he planned to demote him.

113. Since Bogle is a public employee with a property interest in his employment and liberty interest in clearing his name, Bogle requested a due process hearing.

114. Bogle was entitled to notice and an opportunity to be heard about the subject of the discipline.

115. Bogle was entitled to view the investigatory file related to his discipline.

116. However, Bogle was denied access to the file, which contained exculpatory information.

117. Bogle protested the withholding of information by filing a lawsuit under the Alabama Open Records Act.

118. Despite Plaintiff's protestations and the agency's failure to disclose the evidence that would have allowed Bogle to defend himself, the agency proceeded with the hearing.

119. On or about December 16, 2020, Defendant demoted Bogle to Highway Patrol Corporal.

120. Sergeant Douglass Huntley engaged in the same or similar conduct but remained employed without demotion.

121. On May 23, 2019, a fellow trooper, Chad Wynne, reported that Huntley had forged Wynne's name on his performance appraisal.

122. Huntley got only a counseling statement for forging a trooper's signature, a crime.

123. Huntley had also been given the responsibility for scheduling for the post.

124. Huntley delegated that authority to other troopers below him.

125. On July 15, 2019, the training schedule was incorrect.

126. On July 26, 2019, Captain Wright issued Huntley and Bogle a warning for the scheduling error.

127. Bogle had no involvement in the error.

128. Not only was Bogle disciplined, but Wright also skipped the first level of discipline.

129. Huntley's discipline, which he received after the write-up and other prior disciplines, was a step below the discipline Bogle had received for a much lower offense.

130. Huntley had voided a ticket in December and was not demoted.

131. Huntley is a person of African ancestry, colloquially referred to as "Black."

132. After Plaintiff's demotion, the agency posted his former position.

133. In February 2021, Bogle was replaced by a person who is Black.

134. Because of Defendant's discriminatory decision made in whole or in part because of his race, Bogle has lost pay and continues to be paid less.

135. Wright's decision to demote Bogle was made, in whole or part, because of his race in violation of 42 U. S. C. § 1983.

136. Because of Wrights's violation of 42 U. S. C. § 1983, Bogle has been damaged, suffering loss of pay and benefits.

## COUNT III: TITLE VII DISCHARGE IN RETALIATION FOR PROTECTED ACTIVITY[1]

137. Bogle incorporates by reference and realleges preceding paragraphs 1 through 134 as if set out herein.

138. In February 2021, Bogle was replaced by a person who is Black.

139. On or about March 11, 2021, Bogle filed his Charge of Discrimination with the EEOC alleging race discrimination by the Alabama Law Enforcement Agency.

140. Less than a month after Bogle filed his Charge, the Alabama Law Enforcement Agency initiated an investigation into his conduct.

141. On or about June 21, 2021, ALEA terminated Bogle's employment at for conduct that was not a violation of policy.

142. Moreover, the agency began the fishing expedition to unearth these alleged policy violations after the EEOC charge was filed.

143. The allegations primarily center around events previously known to the agency that happened years before Bogle complained.

144. There was no effort to discipline Bogle until he complained about discrimination.

---

1 Plaintiff has not yet received the Notice of Right to Sue for this charge. However, as the statute of limitations is pending for his first charge of discrimination and the claims arise out of the same nucleus of operating fact, such claims are alleged here.

145. Bogle did not engage in any conduct on or off duty that violated policy or the standard operating procedures.

146. Defendant terminated Bogle's employment on or about June 21, 2021.

147. Defendant's decision to terminate Bogle was made, in whole or part, because of his protected activity in violation of Title VII, and but for that conduct, he would not have been fired.

148. Because Defendant violated Title VII, Bogle has been damaged, suffering loss of pay and benefits.

**PRAYER FOR RELIEF**

**WHEREFORE,** Bogle respectfully prays for the following relief:

A. Grant Bogle a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B. Grant Bogle a permanent injunction enjoining the Wright, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1983;

C. Enter an Order requiring the Defendant to make Bogle whole by awarding reinstatement to the position he would have had, had he not been demoted;

D. Award him back pay, with employment benefits, front pay, compensatory damages, special damages; punitive damages against the individual Defendant, nominal damages;

E. Attorneys' fees and costs;

F. Bogle requests that the Court award him equitable relief as provided by law; and,

G. Any other or additional relief as determined by the Court to which Bogle is entitled.

/s/ Kira Fonteneau
Kira Fonteneau (FON007)

**OF COUNSEL:**

Kira Fonteneau
Barrett & Farahany
2 20th Street N, Suite 900
Birmingham, AL 35203
205-606-4106

## PLEASE SERVE DEFENDANT AS FOLLOWS

**Alabama Law Enforcement Agency**
**201 S. Union Street, Suite 300,**
**P.O. Box 304115**
**Montgomery, AL 36104**

**WILL WRIGHT**
**9739 SCOTT DAIRY LOOP RD S**
**MOBILE, AL 36695-8217**