IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN BOGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALABAMA LAW ENFORCEMENT | ) | CASE NO. 1:22-cv-00256-RAH |
| AGENCY, et al., | ) | [WO] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff John Bogle, a white male, brings this employment discrimination action against his former employer, the Alabama Law Enforcement Agency (ALEA), and his former supervisor, Will Wright.  Bogle claims he was unlawfully discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983 when he was demoted and ultimately terminated.  Discovery now at an end, Defendants have moved for summary judgment on all claims.  With Defendants' motion having been fully briefed and thus ripe for decision, for the reasons more fully set forth below, the motion is due to be GRANTED.

### JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Bogle's federal causes of action.  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391.

## STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law" based on the materials in the record.  Fed. R. Civ. P. 56(a), (c).  The court must view the evidence and make all reasonable inferences drawn therefrom "in the light most favorable to the nonmovant." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Applicable substantive law identifies those facts that are material.  *Id.*  An issue is not genuine if it is unsupported by evidence or created by evidence that is "merely colorable, or is not significantly probative." *Id.* at 249 (citations omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can satisfy its burden of proving the absence of a genuine dispute by citing to materials in the record or by showing the nonmovant cannot produce evidence to establish an element essential to their case to which it has the burden of proof.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 322–23.  If the movant meets this burden, the burden shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial" with evidence beyond the pleadings.  *Celotex Corp.*, 477 U.S. at 324.  Generally, a "mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 252.

## BACKGROUND

The pertinent facts are long but are stated in the light most favorable to Bogle as follows:

**1.    John Daryl Bogle**

Bogle began his employment with ALEA in January 2005 as a trooper-in-training and was assigned to work out of the Mobile, Alabama post.  (Doc. 41-4 at 40.)[1]  He was promoted to highway patrol corporal in February 2010 (*id.* at 42), and then promoted to highway patrol sergeant in November 2015 (*id.* at 43) where he served until his involuntary demotion to highway patrol corporal and transfer to the Dothan post (*id.* at 44).  Bogle's employment with ALEA was terminated on July 2, 2021.  (*Id.* at 46–47.)

**2.    Alleged Incidents of Discrimination**

**a. Scheduling Warning**

Defendant Will Wright (black male) was promoted to highway patrol captain over the Mobile post in August 2018 and served as Bogle's supervisor.  (Doc. 41-5 at ¶ 3.)  Prior to Wright's appointment, Bogle consistently received favorable annual performance reviews and had never received any discipline.  (Doc. 41-7 at 10.)

Bogle and another sergeant, Douglas Huntley (black male), jointly served as the Mobile post commander, and therefore split the duties of commander.  (Doc. 41-5 at ¶ 4.)  In a directive to them, Wright "made clear that both Bogle and Huntley were responsible for all of the duties of Post Commander, regardless of how they divided the duties amongst themselves."  (*Id.*)

On July 15, 2019, Wright sent an email to both Bogle and Huntley instructing them to schedule a group of troopers for training.  (Doc. 41-7 at 27.)  Several days later, Wright instructed them to "work together to improve Mobile Post operations."  (*Id.*)

Approximately two weeks after his training directive, Wright issued Bogle and Huntley a warning for failing to schedule troopers for training as directed.  (Doc.

---

[1] For the sake of clarity, documents will be referred to by their page or paragraph numbers based on their CM/ECF document page numbers.

41-5 at ¶¶ 4–5; Doc. 41-7 at 9.)  Although Bogle's annual performance appraisal reflected this warning, the warning did not affect his performance appraisal score and he received his maximum raise.  (Doc. 41-6 at 119:4–10; Doc. 41-7 at 29–30.)

### b. Workplace Bullying Investigation

On April 11, 2020, three ALEA employees—Corporal Gary Garrick, Corporal Clifford Bergerson, and Trooper Ronnie Redding—approached Wright with their concerns about Bogle and his bullying in the workplace.  (Doc. 41-5 at ¶ 7.)  Wright also received complaints about Bogle from two other ALEA employees, Troopers Anna Conner and Scott Sherrer.  (*Id*.)  Although Wright personally concluded that Bogle's actions did not violate ALEA policies, ALEA's Integrity Unit (IU) opened an investigation on June 17, 2020, after a directive from Deputy Secretary Scottie Chandler to IU Commander Mike Trotter (white male).  (*Id.* at ¶¶ 8–9; Doc. 41-10 at 2.)  Based upon findings from the investigation, Commander Trotter concluded that the allegations of workplace bullying were unfounded.  (Doc. 41-10 at 18.)

### c. The Carlisle Investigation and Demotion

On April 29, 2020, while the workplace bullying investigation was pending, Special Agent Brett Manuel informed Wright that six months earlier Bogle had attempted to void a traffic citation issued by another trooper to motorist, Ashley Carlisle.  (Doc. 41-5 at ¶ 10.)  That trooper, Trooper Howard Krauss, was unwilling to void the ticket.  (Doc. 41-7 at ¶ 4; Doc. 41-8 at ¶ 3.)  According to Agent Manuel, Bogle told Carlisle "not to drive to court" on her court date, and because she did not attend, the state court issued an arrest warrant for her failure to appear and her driver's license was suspended.  (Doc. 41-5 at ¶ 10; Doc. 41-8 at 7.)

Wright then began an investigation into these new allegations but stopped investigating at the direction of Chief Susanna Capps, who informed him that IU would be conducting an investigation.  (*Id.*; Doc. 41-9 at ¶ 4; Doc. 41-10 at ¶ 6.)

Special Investigator Marc Boyd performed the investigation for IU, including interviews of Bogle, Trooper Krauss, Agent Manuel, and Carlisle, a review of various materials including emails and texts, and prepared an investigative summary report that was provided to Commander Trotter.  (Doc. 41-10 at ¶ 7.)  In addition to his interview summaries, Boyd's report also noted that, during the investigation, Bogle acknowledged that the conduct leading to Carlisle's driver's license suspension and the arrest warrant was a "major violation" of ALEA policies.  (*Id.* at 25.)

With Boyd's report in hand, Commander Trotter issued a memorandum to Deputy Secretary Chandler on June 23, 2020 with his recommended findings: Bogle improperly advised Carlisle—who had been issued a valid traffic citation by a trooper not within Bogle's chain of command—not to show up for a court date, thereby causing Carlisle's driver's license suspension and the issuance of an arrest warrant against her, and that Bogle had improperly attempted to circumvent a trooper's valid ticket against that trooper's will.  Commander Trotter ultimately concluded that Bogle's conduct violated several ALEA and DPS policies regarding professional and employee behavior conduct.  (*Id.* at 29–30.)

As a result of IU's investigation, Colonel Charles Ward, Director of the Department of Public Safety (DPS), reviewed Commander Trotter's recommended findings and on August 7, 2020 recommended to the ALEA Secretary that Bogle be demoted.  (Doc. 41-11 at ¶¶ 6–7.)  Following notice of the intent to demote him, Bogle exercised his right to a pre-disciplinary hearing.  The State Department of Personnel upheld the demotion decision, and the ALEA Secretary accepted the request for demotion.  (Doc. 41-3 at 7–12; Doc. 41-4 at 44–45.)  Following his demotion on December 16, 2020, Bogle was transferred to the Dothan post.  (Doc. 41-4 at 45.)

### d. ALEA Replaces Bogle at the Mobile Post

Bogle's demotion and transfer created a vacancy for a sergeant position at the Mobile post, and therefore ALEA announced the opening of the position and requested a Certificate of Eligibles (COE) from the State Personnel Department (SPD). (*Id.* at 64–65.) Seven individuals from the COE applied for the open position, including Corporals Tommy Averette (white male), Donald Byrd (white male), and Brandon Christen (black male). (Doc. 41-4 at 69.) Consistent with its policy, ALEA established an interview panel composed of the position's immediate supervisor and at least two other members of equal or higher rank to that of the vacant position. (*Id.* at 59.) The panel then interviewed the applicants, ranked them, and submitted their ranking list to the personnel director of ALEA who convened a meeting of the Promotion Review Board[2] (PRB) for a final recommendation. (*Id.* at 68.)

The interview panel ranked Corporal Averette as their first choice, but the PRB ultimately selected Corporal Christen because of his extensive law enforcement experience, master's degree in criminal justice, and military service. (Doc. 41-11 at ¶¶ 13–14.) The PRB then forwarded its recommendation to the ALEA Secretary who made the final hiring decision and selected Corporal Christen. (*Id.*; Doc. 41-4 at ¶ 17.)

Shortly thereafter, on March 10, 2021, Bogle filed his first EEOC charge of discrimination. (Doc. 41-7 at 23–25.)

---

[2] The PRB consists of the ALEA Deputy Secretary, the Department of Public Safety Director, the State Bureau of Investigation Director, the Protective Services Unit Chief, the Administrative Bureau Chief, Chief Legal Counsel for ALEA, and the Personnel Director for ALEA. (Doc. 41-4 at 59–60.)

### e. The Buc-ee's Investigation & Termination

On April 5, 2021, less than one month after he filed his EEOC charge and his transfer away from the Mobile post to the Dothan post, Bogle called Trooper Alec Peek in the Mobile post and requested that he meet Bogle at the Buc–ee's gas station in Robertsdale, Alabama to take supplies to the Mobile Driver License Office.  (Doc. 41-10 at 33.)  While at Buc-ee's, Bogle discussed the Mobile post and other matters involving ALEA, including now-Sergeant Christen's recent promotion, a lawsuit by Bogle, and Bogle's belief that his lawsuit already had resulted in the termination of two employees and was going to lead to the termination of several others.  (*Id.* at 34.)  But unbeknownst to Bogle, Trooper Peek left a cellular telephone line open so that Troopers Cory Athey and Taylor Repka could overhear the conversation.  (*Id.*)  Following Bogle's conversation with Peek, Trooper Athey notified Sergeant Christen of what Bogle had said about him and the post.  (*Id.* at 33.)  Sergeant Christen then instructed Troopers Peek, Athey, and Repka to provide written statements regarding Bogle's comments, which he later forwarded up the chain of command.  Deputy Secretary John Hamm then forwarded the statements to Commander Trotter and directed IU to investigate the incident.  (*Id.* at 33–36.)

At approximately the same time, Sergeant Christen also reported to Personnel Director Goolsby two additional instances where he felt Bogle had exhibited disruptive or harassing behavior towards him.  First, he conveyed that Bogle had reviewed Christen's bodycam footage from a car accident scene and had alleged that Christen had overstepped on the scene and was "showboating" to be the new post commander.[3]  (*Id.* at 33.)  Second, Christen reported that Bogle had accused him of

---

[3] At the time of this event, Bogle was appealing his demotion.  His demotion would create a vacancy at the Mobile post that Corporal Averette and then-Corporal Christen would both be eligible to apply for.  (Doc. 41-10 at 33; Doc. 41-4 at 69.)

improperly handling drug evidence seized during an arrest in an effort to attack Christen's credibility. (Doc. 41-10. at 34.)

IU investigated the new allegations. (*Id.* at 3, 33.) Christen's allegations and the new interviews then led to a review of Bogle's emails. (Doc. 43-10 at ¶ 11) That review resulted in the discovery of emails showing that Bogle had allegedly engaged in a pattern of improperly disclosing confidential information to outsiders (including his wife and a personal friend) in violation of a confidentiality directive in the Carlisle matter and that he had also disparaged certain ALEA officials. (Doc. 41-10 at ¶¶ 12–15.) Other emails were discovered showing, for example, that Bogle had, without authorization, contacted the Mobile County district attorney in an effort to verify an earlier statement by Captain Wright about a drug evidence matter that already had been resolved. (*Id.* at 37–38.)

The IU investigation also revealed that Bogle had, unbeknownst to them, recorded a private conversation between Goolsby, ALEA General Counsel Noel Barnes, and Assistant Attorney General Michelle Cone during a break in Bogle's demotion hearing. (*Id.* at 40.) According to Bogle, he left the recording device on record by mistake during a break, yet he did not destroy or delete it after discovering the recording. (*Id.* at 40.)

Commander Trotter ultimately concluded that Bogle had engaged in misconduct in violation of ALEA policies, including: Disruptive Conduct of Any Sort; Conduct Unbecoming of a State Employee; Professional Behavior & Conduct; Employee/Witness Statements; Confidentiality of Information; Insubordination; and Conformance to Law. (*Id.* at 40–47.) Trotter further concluded that Bogle had violated several DPS policies, including: Duties of a Field Supervisor/ALEA Corporal, Employee Conduct—Conduct Unbecoming: Unauthorized Release of Privileged or Confidential Information, Employee Conduct—Misconduct: Any

criminal conduct defined by the Code of Alabama or the United States Code; and Chain of Command.  (*Id.*)

Following IU's investigation, then-Director of DPS, Colonel Jimmy Helms, reviewed IU's file and recommended Bogle's termination.  (Doc. 41-6 at 315:18–22; Doc. 41-4 at ¶ 18.)  ALEA Secretary Hal Taylor accepted the recommendation (Doc. 41-4 at 46–47) and notified Bogle of his termination that same day (*id.*).

## DISCUSSION

### 1.    Title VII Race Discrimination Claim - Demotion

Bogle's Title VII discrimination claim requires proof of discriminatory intent. *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000).  Where, as here, a plaintiff attempts to prove discriminatory intent by circumstantial rather than direct evidence, his claims generally are subject to the *McDonnel Douglas* burden-shifting framework.  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  But the *McDonnell Douglas* framework is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith v. Lockheed-Martin Corp.*, 633 F.3d 1321, 1328 (11th Cir. 2011).  "A triable issue of fact exists if the record, viewed in light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  *Id.* (footnote omitted) (citation omitted).    Here, Bogle invokes the *McDonnell Douglas* framework[4] as it concerns his Title VII race discrimination claim.

---

[4] To the extent Bogle raises the convincing mosaic framework, he has abandoned it as he gives it only one general sentence of reference in his summary judgment brief.  *See Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  But even if Bogle has sufficiently raised it, nothing in the facts presented here evidences a convincing mosaic of discrimination.

Under the *McDonnell Douglas* framework, Bogle has the initial burden of establishing a prima facie case of discrimination. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc). ALEA concedes that Bogle can establish a prima facie case of discrimination, as ALEA promoted Christen—a black male—into the position formerly held by Bogle following his demotion (Doc. 42 at 19), and therefore the burden shifts to ALEA to produce a legitimate, non-discriminatory reason for the challenged action, Bogle's demotion. If ALEA carries its low burden, Bogle must "demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that [he] has been the victim of intentional discrimination." *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)) (internal quotations omitted). Bogle must establish that the proffered reason was not the true reason for the employment action "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804–05). He may do by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason for its action that a reasonable factfinder could find . . . unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519,1538 (11th Cir. 1997).

This Court's task is a "highly focused one," viewing all the evidence and determining "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Id.* (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)) (internal quotations omitted).

ALEA argues that Bogle was demoted for his misconduct related to the Carlisle ticket after an investigation revealed that Bogle had engaged in conduct in violation of ALEA and DPS policies regarding professional and employee behavior. (Doc. 41-10 at 29–30.) That is a sufficient legitimate, nondiscriminatory reason for his demotion, and therefore Bogle must rebut it.

Bogle argues ALEA's reasons for his demotion are pretextual by pointing out several claimed weaknesses with the Carlisle investigation. First, Bogle contends that he was "singled out" for investigation six months after the Carlisle incident occurred due to Wright's solicitation of complaints against him. (Doc. 43 at 28.) The record, however, does not support this assertion, as the evidence reveals that Wright never solicited complaints about Bogle; instead, several troopers approached him on two separate occasions regarding Bogle's misconduct. (Doc. 41-5 at ¶¶ 5, 10.) But even if Wright solicited the complaints, that action does not in isolation or in totality with Bogle's other claims constitute sufficient evidence of pretext.

Second, Bogle says it was a common practice to void tickets as a favor to other troopers, including situations where supervisors asked a subordinate to do so. (Doc. 43 at 28.) That may be so, but Bogle was not demoted for requesting that Trooper Krauss void the Carlisle ticket; he was demoted for telling Carlisle to ignore her court date which resulted in the suspension of her driver's license and the issuance of an arrest warrant against her, and for attempting to circumvent another trooper's ticket against that trooper's will.

Third, Bogle claims that no actions were taken against Trooper Krauss and Trooper Manuel, even though they were both in court on the day Carlisle was required to attend court. But again, Bogle's primary issue was his statements to Carlisle that she should attend court on a ticket over which he had no authority. (Doc. 41-8 at 4; Doc. 41-10 at 25.)

Bogle also points to a comparator, a black trooper named Lester Thomas, who was not disciplined after he failed to properly void a ticket that resulted in a failure-to-appear warrant against the ticketed driver. (Doc. 43 at 28.) But Bogle has not shown Thomas to be a proper comparator. To constitute an appropriate comparator, an employee must be similarly situated "in all material respects," but need not be "nearly identical" to the plaintiff. *Lewis*, 918 F.3d at 1218. And here, Thomas was a lower ranking officer[5] from Bogle at the time he failed to void a ticket (Doc. 41-6 at 215:14–216:2), the ticket at issue was one that Thomas himself had issued[6] (Doc. 41-6 at 214:8-217:8), and further, unlike Thomas, Bogle had told the ticketed driver that she need not attend court on the ticket which resulted in her receiving both a suspension of her driver's license *and* an arrest warrant. (Doc. 41-5 at ¶ 10; Doc. 41-8 at 4–5; Doc. 41-10 at 25.) In total, Thomas and the circumstances in which he voided a ticket are far too different from those of Bogle for Thomas to be considered an appropriate comparator. As such, Bogle's citation to Thomas as a comparator is unpersuasive.

As a result, Bogle has not met his pretext burden. ALEA is therefore entitled to summary judgment on Bogle's Title VII claim.

## 2.   Bogle's § 1983 Claim Against Wright for the Demotion

Bogle's § 1983 claim against Wright is based on the same demotion made the basis of Bogle's Title VII discrimination claim against ALEA. Wright, in addition to the reasons ALEA gives in defense of the Title VII claim, also argues that he was not the ultimate decisionmaker as it concerns Bogle's demotion and therefore he was

---

[5] The record is not particularly clear about what position Thomas held within ALEA, nor was there any evidence related to Thomas's employment history with ALEA.

[6] Again, the record is not clear on what action was taken against the motorist to whom Thomas had issued the ticket. Bogle does not remember whether an arrest warrant was issued, whether the motorist's driver's license was suspended, or whether both actions took place.

not the "but-for" cause of Bogle's demotion.  Bogle argues that Wright's role in the Carlisle investigation is the "but-for" cause of his demotion because without Wright's actions in soliciting other complaints about Bogle and without his investigation, his demotion would never have occurred.

Where, as here, a Title VII discrimination claim and a Section 1983 claim "are based on the same set of facts," the claims "have the same elements." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (internal quotation marks omitted).  A plaintiff alleging that a defendant discriminated against him in violation of Title VII and § 1983 "has the burden of persuading the trier of fact that the defendant has committed intentional discrimination." *Lincoln v. Bd. of Regents of Univ. Sys. of Ga.*, 697 F.2d 928, 936 (11th Cir. 1983).  To do so, a plaintiff need not present evidence that the employee's supervisor was intentionally racist or acted on overt racial bias, or that her race was "the only motive behind the challenged action." *Id.* at 938 (internal quotation marks omitted).  Rather, the plaintiff must present evidence sufficient for a reasonable jury to find that the plaintiff's race was "a motivating factor" in the challenged action, 42 U.S.C. § 2000e-2(m), or for a claim under § 1983, a "but-for cause" of the challenged action.  *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,* 140 S. Ct. 1009, 1014 (2020).  The difference between those standards is that under Title VII's motivating factor test, once a plaintiff proves that race was a motivating factor in the challenged action, "[a] defendant may . . . invoke lack of but-for causation as an affirmative defense, but only to stave off damages and reinstatement, not liability in general." *Id.* at 1017.  In other words, the "causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002).

In addition to the reasons ALEA is entitled to summary judgment on the Title VII claim relating to Bogle's demotion, Bogle also has not shown that Wright was the "but-for" cause of his demotion.   The record reflects that Wright's only involvement in Bogle's demotion was that he received information from another ALEA employee about the Carlisle ticket, began an investigation into the allegations, passed information up the chain of command, and stopped investigating following a directive from his supervisor because of IU's ongoing investigation.[7] (Doc. 41-5 at ¶ 10; Doc. 41-5 at 53; Doc. 41-9 at ¶¶ 3–4.)  No evidence has been provided showing that Wright ever concluded that Bogle's conduct violated ALEA policy, as that determination was separately made by IU based on numerous subsequent interviews of others and facts that Bogle largely does not dispute.  (Doc. 41-5 at ¶ 10; Doc. 41-10 at 29–30.)  Further, the record is devoid of any reference to Commander Trotter or Secretary Taylor solely considering Wright's investigation when Secretary Taylor demoted Bogle.  Nor has Bogle shown how the complaints Wright received, even if solicited by him, constitute evidence of discrimination in connection with Bogle's demotion.  As a result, Bogle has not produced sufficient evidence showing that Wright's conduct was the "but-for" cause of his demotion, especially when Bogle does not challenge the veracity of the conduct on which the demotion was based.  Bogle's arguments about what a jury *could* believe cannot rest on speculation and conjecture, void of foundation in fact, even when viewed in a light favorable to him.  As a result, Wright is entitled to summary judgment on the § 1983 claim asserted against him.

---

[7] There is a conflict between Chief Susanna Capps's affidavit and Director Ward's deposition. (Doc. 41-9 at ¶ 5; Doc. 41-13 at 93:16–94:5; 95:13–96:20.)  Ward claims he became aware of the Carlisle matter from a phone call from a judge or judicial officer.  Capps claims she was only informed of the matter after Wright notified her. While this is a dispute of fact, it is not a genuine dispute of *material* fact since it is not outcome-determinative and therefore does not warrant summary judgment on this alone.

### 3.    Retaliation

Bogle also alleges he was subject to retaliation in violation of Title VII when he was terminated following an investigation into misconduct that took place less than a month after he filed an EEOC Charge of Discrimination.  (Doc. 25 at 15–16.) ALEA also moves for summary judgment on this claim.

As a preliminary matter, the parties dispute the nature of Bogle's retaliation claim.  And that dispute seems to drive the parties' position as to whether summary judgment is due to be granted.  ALEA argues the Complaint only pleads a claim of retaliatory discharge/termination after Bogle engaged in protected conduct through the filing of his EEOC charge and that Bogle cannot amend his complaint through summary judgment briefing to expand the claim beyond that.  *See, e.g., Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004) (a party "may not amend [his] complaint through argument in a brief opposing summary judgment").  Bogle argues the retaliation claim is much broader.  He asserts that he engaged in three instances of protected conduct—the filing of his EEOC charge, his discussions with Trooper Peak at Buc-ee's on April 5, 2021, and the content of the emails found by ALEA during its inspection of his workplace email account.  He also seems to argue that he was retaliated against not only through his termination but also through the investigation itself, including the search of his work computer system, which he says is actionable as evidenced by the federal district court decision in *Smith v. City of Pelham*, No. 2:17-cv-01320-ACA, 2021 WL 5863412 (N.D. Ala. Dec. 10, 2022).

The Court agrees that Count Three of the operative complaint does not read nearly as broad as Bogle argues.  Count Three is labeled as a claim for "Title VII Discharge In Retaliation for Protected Activity."  And as for protected activity, Count Three explicitly references the March 11, 2021 EEOC charge and further alleges that "Defendant's decision to terminate Bogle was made, in whole or part, because of his protected activity in violation of Title VII."  (Doc. 24 at 15–16.)

Nowhere does Bogle allege in Count Three that he was basing his claim on any comments, statements or activities associated with his April 5, 2021 interaction with Trooper Peek or the contents of any emails or documents on his email account or work computer.  Further, nowhere does Bogle allege in Count Three that the adverse action for which he seeks damages is the investigation itself.  As the governing complaint makes clear, Count Three is a retaliatory discharge claim premised on Bogle's EEOC charge and subsequent termination, and nothing else.  Bogle cannot now use his summary judgment briefing to raise a new claim or theory of retaliation that he has not plead.  *Gilmour*, 382 F.3d at 1314 (a liberal pleading standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage").  Nevertheless, while the investigation and the circumstances surrounding it may not be actionable in and of itself, that does not mean that it cannot constitute evidence of pretext.

Title VII makes it unlawful for employers to retaliate against employees who oppose unlawful discriminatory conduct.  *See* 42 U.S.C. § 2000e-3(a).  "To make a prima facie case for a claim of retaliation under Title VII, a plaintiff must first show (1) that '[he] engaged in statutorily protected activity,' (2) that '[he] suffered an adverse action,' and (3) 'that adverse action was causally related to the protected activity.'"  *Gogle v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (citation omitted).  Once the *prima facie* case is established, it creates a "presumption that the adverse action was the product of an intent to retaliate."  *Id*. at 1135 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009)).  The burden of production then shifts to the employer to rebut the presumption by "articulating a legitimate, non-discriminatory reason for the employment action."  *Id*.  If the employer produces such a reason, the presumption is rebutted, and the plaintiff must then demonstrate that the "proffered reason was merely a pretext to mask [retaliatory] actions."  *Id*.

ALEA concedes that Bogle engaged in protected activity when he filed his EEOC charge and that he suffered an adverse employment action when ALEA terminated his employment. (Doc. 42 at 25.) ALEA instead argues that Bogle cannot establish causation and prove pretext. The Court pretermits discussion of causation, as the pretext issue is dispositive.

Once an employer provides a legitimate, nondiscriminatory reason for its employment decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason is a pretext for . . . retaliation." *Alvarez v. Royal Atlantic Developers*, 610 F.3d 1253, 1264 (11th Cir. 2010). "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.* 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hick*, 509 U.S. 502, 525 (1993)) (emphasis removed).

ALEA has provided numerous legitimate reasons for terminating Bogle. Namely, Bogle violated ALEA and DPS policies and procedures when he (1) made false and disparaging statements about ALEA leadership to subordinates, (2) made disparaging and harassing statements about Sergeant Christen concerning an accident scene and evidence and communicated with the district attorney's office to verify what had already been reported, (3) disclosed confidential ALEA information to unauthorized persons, and (4) secretly recorded ALEA employees, including ALEA general counsel. (Doc. 41-16 at 23–24, 29.) These are legitimate, nondiscriminatory reasons for his termination, a very low bar to meet.

Bogle disputes or quibbles with some of these and ignores or admits to others. For example, during the investigation, Bogle acknowledged that, with respect to his missing evidence accusations against Sergeant Christen, Bogle did, without authorization, contact the Mobile County district attorney despite Wright's instructions via email to Bogle that the missing evidence matter had been resolved

17

and that Bogle was not responsible nor authorized to investigate the matter.  (Doc. 41-6 at 286:1–287:5; 288:8–16; 289:22–291:1.)  Bogle also admitted during IU's investigation that he had secretly recorded ALEA employees including ALEA attorneys, had violated a confidentiality agreement, and had shared confidential ALEA information with unauthorized persons.  (Doc. 41-6 at 302:5–13; 307:11–22; 308:7–10; 315:9–14.)  Bogle does not dispute that he made those acknowledgements to IU during its investigation of him.  Instead, he quibbles with the other reasons raised by ALEA.  Thus, even looking at the evidence in the light most favorable to Bogle and ignoring the actions and statements that Bogle does dispute, Bogle has not provided sufficient evidence of pretext, especially since he must rebut each of ALEA's stated reasons for his termination head on, which he has not done here.  *See Crawford v. City of Fairburn, Ga*., 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.").  Indeed, ignoring the violations related to statements made about ALEA, leadership, Christen, and the Mobile post, which he characterizes as protected speech, IU still found that Bogle violated numerous ALEA and DPS policies.  (Doc. 41-10 at 41–47.)  And on those, Bogle does not raise a factual dispute, and certainly not one supporting pretext.

In sum, Bogle has failed to produce sufficient evidence from which a reasonable jury could conclude that, but for his protected activity, ALEA would not have terminated him.  Consequently, ALEA's summary judgment motion is due to be granted on Bogle's Title VII retaliation claim against ALEA.

## CONCLUSION

For the reasons stated, it is hereby ORDERED that the Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED**.  A separate Final Judgment will be entered.

DONE on this the 1st day of November, 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE